IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MIKE BRUNZ, | ) | CASE NO. 7:06CV5003 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| CITY OF MITCHELL, and | ) | |
| LARRY BARE, | ) | |
| | ) | |
| Defendants. | ) | |

The matter before the Court is the Defendants' Motion for Summary Judgment (Filing No. 23). For the reasons stated below, the Defendants' motion will be granted, and the Plaintiff's Complaint will be dismissed, the federal claims with prejudice and the state claims without prejudice.

**Procedural Background**

On January 6, 2006, the Plaintiff Mike Brunz ("Brunz") filed a Complaint (Filing No. 1, Ex. 1) in the District Court for Scotts Bluff County, Nebraska, alleging that the Defendants—the City of Mitchell and its mayor, Larry Bare—engaged in a civil conspiracy under 42 U.S.C. §§ 1983, 1985, by violating Brunz's First Amendment rights of speech and expression, Fourteenth Amendment right of equal protection, and Fourteenth Amendment right of due process.[1] Because of the federal questions involved, the case was removed

---

[1]Brunz also alleged similar violations of the Nebraska State Constitution. I note that the Nebraska Supreme Court "has repeatedly and consistently stated that the guarantee of freedom of speech under the Nebraska Constitution is the same as under the First Amendment to the federal Constitution." *Dossett v. First State Bank*, 627 N.W.2d 131, 138 (Neb. 2001). Similarly, "[t]he due process requirements of Nebraska's Constitution are similar to those of the federal Constitution." *Valasek v. Neth*, 2006 WL 1889172, at *5 (Neb. App. July 11, 2006) (citing *Marshall v. Wimes*, 626 N.W.2d 229 (Neb. 2001)). Because my previous Memorandum and Order dismissing some of his federal claims without prejudice did not explicitly do so, I note that I will herein dismiss Brunz's state law claims without prejudice for the same reasons I dismissed the similar federal claims.

to this Court (Filing No. 1), and on July 10, 2006, the Defendants filed their first Motion for Summary Judgment (Filing No. 13) asserting a qualified immunity defense. In the Memorandum and Order dated August 25, 2006 (Filing No. 18), the Court found that Brunz's Section 1983 action that was based on alleged retaliation for Brunz's exercise of his First Amendment right of access to the courts survived the Defendants' motion, but that all other federal causes of action should be dismissed without prejudice.

On June 4, 2007, the Defendants filed the current Motion for Summary Judgment, and a brief in support of that motion. They argue that for Brunz's sole remaining cause of action, a claim of retaliatory discharge, there are no genuine issues of material fact that remain for trial, and that they are entitled to summary judgment as a matter of law. Brunz has filed no brief in opposition to the Defendants' motion.

## Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted). Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

### Facts

The Defendants' brief sets forth a statement of undisputed facts pursuant to NECivR 56.1; however, Brunz has filed no brief in opposition to the motion and no evidence controverting the Defendants' statement of facts. Consequently, in accordance with the local rules of this Court, all facts set forth by the Defendants, supported with citations to the record, will be deemed admitted.[2]

---

[2] "The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery

The Defendant Larry Bare ("Bare") was at all relevant times the mayor of the City of Mitchell. Brunz was employed by the City of Mitchell in its police department. On July 8, 2005, Brunz was suspended with pay following an incident involving his alleged mishandling of a report of a missing minor person.[3] The matter was referred to the Nebraska Attorney General, who assigned the investigation to the Nebraska State Patrol ("NSP"). The NSP investigation confirmed that Brunz had engaged in improper conduct.[4]

---

responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." NECivR 56.1 (b)(1). "Failure to file an opposing brief shall not be considered to be a confession of the motion, but shall preclude the nonmoving party from contesting the moving party's statement of facts." NECivR 7.1 (b)(1)(C).

[3]Although not set forth in the Defendants' statement of facts, it appears from the uncontroverted evidence submitted by the Defendants that the basis for the suspension relates to events that took place in July, 2005. On July 5, 2005, Mr. Kenny Hrasky ("Hrasky") filed a complaint with the Scotts Bluff Police Department indicating that his daughter was missing, that she might be with her mother, and that there was a danger the two of them might leave the state. Brunz called the Communication Center in Gering to obtain a missing persons report, as well as Health and Human Services Child Protection Services to inform them he planned to report Hrasky's daughter as a runaway. Brunz then spoke with Hrasky, who suggested his daughter might be at a friend's house. Brunz went to the friend's house, where he found Hrasky's daughter. However, due to complaints that Hrasky had been physically abusive with his daughter, Brunz did not inform anyone that he had found Hrasky's daughter. Rather, he told Hrasky's daughter to stay with her friend, and told everyone at that residence not to tell anybody where Hrasky's daughter was. Brunz told the officer who relieved him that there was a missing juvenile report concerning Hrasky's daughter, but Brunz did not tell the relieving officer that he had located her; he did not remove the missing juvenile report from the system; and he filed a written report indicating that he had checked the friend's residence but that no one had answered the door and that he felt she was with her mother in Scotts Bluff. (Affidavit of Larry Bare ("Bare Affidavit"), Filing No. 24-2, Ex. 1, pp. 3–4 ¶¶ 14–17; Police Report of Mike Brunz, Filing No. 24-2, Ex. A, p. 7).

[4]Investigator T. Blausey ("Blausey") interviewed Brunz, and reported that "Brunz admitted that he had taken the Missing Juvenile Report and entered [Hrasky's daughter] into the computer as a missing juvenile. He admitted to later locating and having contact with her. He admitted that he intentionally left her in the computer as a missing juvenile and made the decision not to notify her father or other law enforcement agencies that she was not a runaway and that she had been located." (Affidavit of T. Blausey, Filing No. 24-3, Ex. 2, p. 2).

The results of the NSP investigation were turned over to the Scotts Bluff County Attorney's Office, and Brunz was suspended without pay effective November 1, 2005.

In response to that disciplinary action, Brunz requested a hearing under the City of Mitchell Personnel Manual. On November 29, 2005, the requested hearing commenced, but shortly thereafter was cancelled due to Brunz's complaint that the meeting failed to comply with the Open Meetings Act, Neb. Rev. Stat. § 1401 *et seq*. Brunz was again suspended without pay effective December 1, 2005, "until such time as a resolution is determined in regard to [the pending] appeal under Section IV, G of the City of Mitchell Personnel Manual." (Letter from Sharon K. Miller, Personnel Director, to Michael F. Brunz dated November 30, 2005, Filing No. 24-2, Ex. D, p. 22). Brunz requested another hearing pursuant to the City of Mitchell Personnel Manual on December 2, 2005, and a hearing was scheduled for December 20, 2005. However, on December 15, 2005, Brunz filed a Petition-in-Error, and on December 19, 2005, he withdrew his request for a hearing. With no hearing pending, Brunz was terminated from his employment with the City of Mitchell Police Department on December 30, 2005. Brunz filed another Petition-in-Error in response to his termination.[5] (Brief in Support of Motion for Summary Judgment, Filing No. 25, pp. 1–2 ¶¶ 1–10).

---

[5]Bare's affidavit states that Brunz "was terminated not in response to any actions that he took with regard to requesting hearings or filing of a Petition in Error on December 15, 2005. He was terminated based upon the findings of our own investigation along with the investigation of the Nebraska State Patrol. He was not terminated immediately upon the conclusion of that investigation as our understanding was that the investigation was being turned over to the Scotts Bluff County Attorney's Officer for their further review and filing of charges." (Bare Affidavit, p. 4 ¶ 19).

5

**Discussion**

In my previous Memorandum and Order filed on August 25, 2006, I dismissed Brunz's federal claims contained in his second, third, and fourth causes of action,[6] and stated that, based on his Complaint, he could maintain only a Section 1983 cause of action based on alleged retaliation for the exercise of his First Amendment right of access to the courts.  The Defendants, in their current Motion for Summary Judgment, argue that Brunz has not met his burden of establishing a prima facie case for such an action; that they have demonstrated a legitimate, nondiscriminatory reason for terminating Brunz's employment, and that Brunz has not come forward with evidence demonstrating that their proffered reason is actually a pretext for discrimination.

A claim of retaliation is considered under the familiar burden-shifting framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[7]  *See Carrington v. City of Des Moines*, 481 F.3d 1046, 1050 (8th Cir. 2007) ("In the absence of direct evidence, the burden-shifting framework of *McDonnell Douglas Corp. v. Green* governs retaliation claims."); *Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1042–43 (8th Cir. 2007) ("Without direct evidence of a retaliatory motive, we analyze retaliation claims . . . under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*").  Under the *McDonnell Douglas* burden-shifting scheme, the initial burden rests with a plaintiff, who must establish a prima facie case of discrimination by a preponderance

---

[6] The Court found that Brunz had failed to allege facts sufficient to support his equal protection, due process, and Section 1985 causes of action, and dismissed those claims without prejudice.  (Filing No. 18, p. 12).  Brunz has not attempted to file an amended complaint restating those causes of action.

[7] Brunz does not argue or offer evidence supporting the existence of direct evidence of discrimination.

6

of the evidence. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). To do so, a plaintiff must show that he exercised rights afforded to him, "and that there was a casual connection between [the] exercise of rights and the adverse employment action." *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). Generally, establishing a prima facie case requires "more than a temporal connection between the protected conduct and the adverse employment action . . . ." *Id.* at 832 (citing *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999)). However, in *some* instances, the Eighth Circuit has held that "the timing of one incident of adverse employment action following protected activity [can] suffice[] to establish causal connection," *id.* (citing *O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193–94 (8th Cir. 1995)), thereby satisfying a plaintiff's initial burden to demonstrate a prima facie case. "Although it is difficult to find a principle neatly explaining why each of our cases held temporal connection was or was not sufficient to satisfy [the plaintiff's initial burden], it appears that the length of time between protected activity and adverse action is important." *Id.* at 833.

After a plaintiff has made a sufficient showing of a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Once such a reason is articulated, the burden of production shifts back to the plaintiff to demonstrate that the proffered nondiscriminatory reason is a pretext for intentional discrimination. *Allen v. Interior Constr. Servs.*, 214 F.3d 978, 981 (8th Cir. 2000) (citing *Kiel*, 169 F.3d at 1135). At this third step, the plaintiff is obligated to present evidence that "(1) creates a question of as to whether [the defendant's] proffered reason was pretextual and (2) creates a reasonable inference that [the defendant] acted in retaliation." *Allen Health Sys.*, 302 F.3d at 833 (citing *Erickson v. Farmland Indus., Inc.*,

271 F.3d 718, 726 (8th Cir. 2001)). While possibly sufficient to establish a prima facie case, the Eighth Circuit Court of Appeals has suggested that the existence of a temporal connection does not satisfy a plaintiff's burden to demonstrate pretext for discrimination. *See id.* at 834 ("'An employee's attempt to prove pretext or actual discrimination requires more substantial evidence [than it takes to make a prima facie case], however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification.'" (quoting *Sprenger v. Federal Home Loan Bank*, 253 F.3d 1106, 1111 (8th Cir. 2001)).

Brunz has not filed a brief in opposition to the Defendants' motion. He has not offered specific arguments or evidence establishing a prima facie case of retaliation. However, viewing the facts in a light most favorable to Brunz, the Court finds that Brunz exercised rights afforded to him by filling his first Petition-in-Error; that approximately two weeks later he was subjected to an employment action that is adverse as measured against a reasonable employee standard – being fired; and that, under Eighth Circuit case law, the temporal proximity is sufficient to find a causal connection between the two. Therefore, for purposes of this motion, the Court concludes that a prima facie case of retaliatory discrimination has been established.

Having found a prima facie case of discrimination, it is incumbent upon the Defendants to come forward with a legitimate, nondiscriminatory reason for their treatment of the Plaintiff. The Defendants in this case have offered such a reason—specifically, the Defendants state that they fired Brunz based on his mishandling of the missing minor person report on or about July 5, 2005, which actions were found to be improper following investigations by the City of Mitchell and the NSP.

After a nondiscriminatory reason is offered by a defendant to explain its employment decisions, the burden shifts back to the plaintiff to show that the reason is "unworthy of credence." *Id.* Brunz has offered no evidence and no argument to demonstrate that the Defendants' stated reason is actually a pretext for discrimination. Further, my initial finding—that the temporal proximity between the exercise of rights afforded to Brunz and the adverse employment action creates an inference sufficient to establish a prima facie case—is not sufficient to establish that the Defendants' legitimate, nondiscriminatory reason is actually a pretext for discrimination. Brunz has not come forward with evidence or argument establishing that the Defendants' non retaliatory and legitimate reason for the adverse employment action is a pretext for discrimination or retaliation. Accordingly, Brunz's remaining federal claim cannot survive the Defendants' Motion for Summary Judgment.

IT IS ORDERED:

1. The Defendants' Motion for Summary Judgment (Filing No. 23) is granted;
2. Plaintiff's claims set forth in the Complaint's first and fourth causes of action alleging deprivation of rights guaranteed under the United States Constitution and 42 U.S.C. § 1983 are dismissed with prejudice;
3. Plaintiff's claims set forth in the Complaint's first and third causes of action alleging deprivations of right guaranteed under the Constitution of the State of Nebraska are dismissed without prejudice; and
4. A separate judgment will be entered.

DATED this 16th day of July, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge